# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL HARPER, | ) | FEDERAL HABEAS CORPUS |
| Petitioner, | ) | |
| v. | ) | Case No.: _____ |
| BRITTANY GREENE (WARDEN), | ) | |
| Respondent. | ) | |

## CERTIFICATE OF SERVICE

TO: THE CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
600 East Monroe Street
Springfield, Illinois 62701

Please take notice that on *JUNE 27*, 2025, the undersigned submitted for the filing the original FEDERAL HABEAS CORPUS PETITION with the Clerk of the United States District Court for the Central District of Illinois at the address provided above, by E-Filing the same at Western Illinois Correctional Center - Law Library, 2500 Rt. 99 South, Mt. Sterling, IL 62353.

/S/ *Michael Harper*

Michael Harper
Reg. No. B03541
PRO SE PETITIONER
Western Illinois Corr. Cemter
2500 Rt. 99 South
Mt. Sterling, IL 62353

SUBSCRIBED AND SWORN TO BEFORE ME ON

THIS *27* DAY OF *June*_____, 2025

_____
NOTARY PUBLIC

SEAL

OFFICIAL SEAL
SCOTT GREGORY
NOTARY PUBLIC, STATE OF ILLINOIS
Commission No.0994454
My Commission Expires July 31,2028

# UNITED STATES DISTRICT COURT // CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL L. HARPER<br><br>    PETITIONER | FEDERAL HABEAS CORPUS |
| VS. | COURT NO: _____ |
| BRITTANY GREENE ( WARDEN)<br><br>    RESPONDENT | |

PETITIONER'S FEDERAL WRIT OF HABEAS CORPUS RELIEF PURSUANT TO 28 U.S.C. 2254

BASED ON AN UNCONSTITUTIONALLY DEFECTIVE CRIMINAL LEGAL PROCESS THROUGH

OUTRAGEOUS PROSECUTORIAL AND POLICE MISCONDUCT AS WELL AS WILFUL INEFFECTIVE

ASSISTANCE OF COUNSEL; ALL OF WHICH FORESEEABLY RESULTED IN HIS WRONGFUL

FELONY MURDER CONVICTION

Now comes Petitioner, Michael L Harper, pro se, and pursuant to 28 U.S.C. 2254, moves this

Honorable U.S. District Court for Federal Habeas Corpus Relief by vacating his wrongful felony murder

conviction and discharge him from his current imprisonment at the Western Illinois Correctional Center

in Mt. Sterling under Respondent Warden Brittany Greene; based on an unconstitutionally defective

legal process in a substantial form through outrageous prosecutorial and police misconduct as well as

ineffective assistance of counsel during his second trial and post-conviction proceedings, and in support

therein, submit his following verified complaint:



## PERTINENT AND WELL-DOCUMENTED FACTUAL BACKGROUND

(1)      On May 28, 1988, at approximately 5:00 am, the Magic Video Store at 420 East 63rd Street, Chicago, Illinois and the next door Chinese restaurant caught fire. See People v Brown, 253 Ill. App. 3d (1st) 165 ( Ill. App. Ct. 1993)

(2)      •  While on duty, on said date, time, and place, Chicago P.D. Officers David Brown and Hester Scott observed smoke coming from the said Magic Video Store, called the fire department and also checked to see if anybody was in the said video store. See People v Brown, supra.

(3)      At the same time and place, Petitioner identified himself as the owner of the said video store, and volunteered to accompany the officers in their investigation. See People v Brown, supra.

(4)      When Chicago Fireman Kevin Brannigan arrived at the said video store, an explosion within the store knocked him back five feet, and after the fire was put out Fireman Brannigan entered the said Chinese restaurant, found two dead bodies who died from obvious smoke inhalation, and then determined that the fire had originated in the said video store and also noted the smell of gasoline was in the air of the video store. See People v Brown, supra.

(5)      Moreover, Chicago P.D. Det. Joseph Campbell, an expert in the field of fire origin, determined that the point of origin for the subject fire was the video store, and that an accelerant had been used. It was Det. Campbell's opinion that the fire had been intentionally set in the rear of the video store with gasoline from a (2) gallon gasoline can that he found at the corner of the said store building by an alley. See People v Brown, supra.

(6)      The State's witness, Sid Malone, testified at trial that he was at 63rd and Vernon at approximately 5:00 am on 5/28/1988; when he observed a van with LC# GAS 403 parked in front of the said video store and Chinese restaurant. He further testified that he observed two people who walked across the front of the van and toward the said video store. Malone also testified that one of the men carried a gas can, and within a few minutes later, Malone saw smoke coming from the said video store. See People v Brown, supra.



(7)     It is extremely important to note that it is well-documented and undisputed that the State's witness, Sid Malone, was UNABLE to identify in court whether Petitioner or Co-Defendant Arthur Brown were the men he observed in front of the video store.  <u>See People v Brown, supra.</u>

(8)     Likewise, it is extremely important to note that although Petitioner and his Co-Defendant Arthur Brown received simultaneous but separate jury trials,  it is well-documented and undisputed that Petitioner's initial felony murder conviction on April 23, 1990 was reversed and remanded on September 3, 1990 due to numerous <u>unconstitutional defects in a substantial form during his first jury trial in the following</u> <u>respects</u>, as succinctly underscored  in People v Brown, supra.:

(A) The highly prejudicial effect of the outrageous trial testimony of state prosecutor Joel Whitehouse unlawfully divulging to Petitioner's jury the specific contents of the non-testifying co-defendant's out-of-court statement that wrongfully implicated Petitioner.

(B) The highly prejudicial opening and closing arguments of state prosecutor Michael Gerber that clearly conflicted with the trial testimony presented to the jury.

(C) The outrageous closing argument of state prosecutor Michael Gerber which unlawfully commented indirectly on Petitioner's constitutional decision and right not to testify.

(D) The State's improper trial testimony of a victim's wife that served no purpose other than to prejudice Petitioner.

(E) The State's improper introduction of a gasoline can into evidence; when the State wilfully failed to establish a proper chain of custody for such physical evidence.

(F) The state prosecutor Michael Gerber's improper comments during his closing arguments;  wherein he improperly expressed his personal opinions as to Petitioner's guilt .

(G) The state prosecutor Michael Gerber's improper comments during his opening statement;  wherein he grossly overstated the evidence as to the victims' manner of death.

(9)     Petitioner's second jury trial began on July 20, 1994; wherein the State read to the jury the trial transcript of Sid Malone's prior testimony from the first trial. See People v Harper, 279 Ill. App. 3d. 801 ( Ill. App. Ct. 1996)

(10)     Likewise, during Petitioner's second jury trial, Assistant States Attorney Joel Whitehouse read Petitioner's confession to the jury that Petitioner stated he drove to the video store at 3:00 am on 5/28/1988 and told Arthur Brown that he would like to burn the tapes because he was not making any money and wanted to collect the insurance; to which Brown agreed to assist Petitioner in exchange for some x-rated videos. Petitioner also stated that he put some videos in his trunk and then sent Jerome Ford to get gasoline; during which time Petitioner bent the burglar bars. Petitioner also added that the mattresses were placed up against the tapes and the fire was started with gasoline. See People v Harper, supra.

(11)     It is extremely important to note that prior to Petitioner's first jury trial, Petitioner's trial counsel presented a pre-trial motion to suppress his said involuntary statement/confession made at the Chicago Police Department due to no Miranda warnings given upon his arrival to the police station; which was summarily denied. See People v Brown, supra. Moreover, Petitioner also challenged his involuntary statement/confession based on the police threatening to arrest his mother if he didn't agree to the said statement/confession; which the courts never addressed.

(12)     Perhaps most important, during the second jury trial the same notorious state prosecutor Michael Gerber that caused the reversal of Petitioner's initial conviction due to his highly improper conduct during the first trial, made nine highly improper and prejudicial comments in his closing arguments that were substantially similar to those listed above in paragraph #8; to which Petitioner's trial counsel wilfully failed to object and include in his post-trial motion, and thus waived such prejudicial issues for review as a matter of law as succinctly stated by the Illinois Appellate Court in People v Harper, supra.



(13)      Lastly, the notorious state prosecutor, Michael Gerber, also unlawfully introduced during trial Petitioner's involuntary and coerced statement/confession, as substantive evidence against him; despite full knowledge that said statement/ confession had been illegally obtained by the Chicago PD.

(14)      Thus, due to these above mentioned unconstitutional defects in a substantial form in Petitioner's second jury trial, Petitioner was foreseeably found guilty of arson and (2) counts of felony murder and sentenced to natural life without parole in wilful violation of his protected 5th, 6th, and 14th Amendment due process rights.

(15)      On April 26, 1996, Petitioner's said wrongful conviction and sentence were affirmed on direct appeal, as fully stated in People v Harper, supra. On October 2, 1996, leave to appeal was denied by the Illinois State Supreme Court. ( People v Harper, 168 Ill. 2d. 608 ( 1996).

## POST-CONVICTION  PROCEEDINGS

(16)      On March 31, 1997, Petitioner, through his counsel, court-filed a petition for post-conviction relief, in which he raised the same issues that had been raised in the second aforementioned direct appeal, but included a new argument that Petitioner was actually innocent of the said crimes based upon the confession of a " James Dell ". However, no affidavits or supporting documents were attached to said petition.

(17)      On May 16, 1997, Petitioner court-filed his pro se successive post-conviction Petition, in which he alleged that another witness , Willie Freeman, would prove his actual innocence. Petitioner further alleged various instances of ineffective assistance of counsel, due process violations and improper remarks by the state prosecutor during his closing argument.

(18)      On June 2, 1997, the Cook County Circuit Court summarily dismissed the said March 31, 1997 post-conviction petition that had been filed by Petitioner's defense counsel. On August 11, 1997, the Cook County Circuit Court summarily dismissed Petitioner's said May 16, 1997 pro se post-conviction petition, finding that it was a successive petition alleging claims which could have been raised in the said initial post-conviction petition, and that the bare allegations of actual innocence did not merit further consideration by the court. In separate orders dated 12/29/1998 and 3/30/1999, the Illinois Appellate Court affirmed the said summary dismissals of Petitioner's (2) post-conviction petitions. People v Harper, NO. 1-97-3735 ( 1998)

and People v Harper, NO. 1-97-3023 ( 1999)) (Both unpublished orders under Ill. Supreme Court Rule 23 ).

(19)     On January 3, 2000, the Petitioner court-filed his Federal Petition for Writ of Habeas Corpus in the U.S.Disrict Court for the North District of Illinois, The said Petition alleged that the trial court committed constitutional errors by refusing to instruct the jury on involuntary manslaughter and by admitting into evidence a photograph of the gasoline can.  On April 18, 2000, the U.S. District Court denied Petitioner's said Federal Habeas Corpus Petition , finding no constitutional violations, United States ex rel Harper vs Welborn, NO; 00CR 0061 ( N.D. Ill)

(20)     On July 25, 2001, Petitioner requested alternative post-conviction relief in the form of a pro se Motion to Vacate the unconstitutional and void conviction judgment in the Cook County Circuit Court pursuant to Apprendi v New Jersey, 530 U.S. 466 ( 2000) and that his sentence was in error.  On August 3, 2001, the Cook County Circuit Court dismissed the said Motion to Vacate; which was affirmed on appeal by the Illinois Appellate Court on April 22,2002. See People v Harper, No. 1-01-3468 ( 2002) ( Unpublished order under Ill Sup. Ct Rule 23).

(21)     On January 24, 2003, Petitioner court-filed his pro se successive post-conviction petition alleging actual innocence based on a 12/3/2002 affidavit signed by the State's witness, Mr. Hingston, the gasoline station manager and attendant. As noted, Mr. Hingston had testified at Petitioner's first trial and the transcript of that trial testimony was read at Petitioner's second trial. On April 18, 2003, the Cook County Circuit Court docketed Petitioner's said pro se successive post-conviction petition and appointed him counsel.

(22)     On July 28, 2009, Petitioner's said court-appointed counsel court-filed an amended petition for post-conviction relief and asserted Petitioner's actual innocence based on NEWLY DISCOVERED EVIDENCE;  that a James Bell had confessed to setting the subject fire for which Petitioner had been convicted. The said amended petition also alleged that in an affidavit executed on 12/3/ 2002, witness Hingston had recanted his trial testimony. Attached to this said amended petition were: (1) the 5/29/2009 signed affidavit by Bell, (2) transcript of Bell's trial testimony at the post-conviction proceedings for co-defendant Arthur Brown, (3) the 12/3/2004 signed affidavit of Hingston; and  (4) the Petitioner's signed affidavit of 7/23/2009.

PROOF OF PETITIONER'S ACTUAL INNOCENCE BASED ON NEWLY DISCOVERED EVIDENCE

 **(23) JAMES BELL'S MAY 29, 2009 AFFIDAVIT:**

The highlights of James Bell's 5/29/2009 affidavit stated that he did not know the Defendant Michael Harper, that he believed co-defendant Arthur Brown owned the video store, that co-defendant Arthur Brown owed him over $1,500 in drug money, and that Bell had set fire to the video store out of anger when co-defendant Arthur Brown did not pay his debt to Bell. People v Harper, 2013 Ill App (1st) 102181 ( 2013).

 **(24) TRANSCRIPTS OF JAMES BELL'S HEARING TESTIMONY AT THE POST-CONVICTION PROCEEDINGS FOR CO-DEFENDANT ARTHUR BROWN:**

The transcripts of co-defendant Arthur Brown's post-conviction proceedings revealed that James Bell testified that he alone was responsible for setting the fire, that he bent the burglar bars on the rear gate of the video store, that he exited through the back door of the video store, and that he dropped the gasoline can and left in his car. James Bell further testified that he did not come forward with this information sooner because of the lingering effects of drugs and his fear of receiving the death penalty, that he had accepted Christianity while serving a sentence in prison on an unrelated matter, and that, as a result of his faith, he no longer feared prosecution for the crime. People v Harper, supra. ( 2013)

 **(25) STATE'S WITNESS HINGSTON'S DECEMBER 3, 2002 AFFIDAVIT:**

In his said 12/3/2002 affidavit, State's witness Hingston attested that his trial testimony was a lie, that he had not sold gasoline to anyone in a truck or a van on the morning of the subject arson and that he told the police this fact, that police officers had infirmed him about two individuals who had confessed to purchasing gasoline from Hingston on that morning, that police officers threatened him with a fine and a negative report to Hingston's boss if Hingston did not identify the individuals they wanted him to identify, and that Hingston cooperated with the police's request to identify certain individuals from a physical lineup. People v Harper, supra., ( 2013)



- 8 -

**(26)  DEFENDANT MICHAEL HARPER'S JULY 23, 2009 AFFIDAVIT:**

In his 7/23/2009 affidavit, Petitioner/ DEFENDANT MICHAEL HARPER attested that he co-owned the subject video store with his mother, Roberta, that he confessed to setting the fire only because police officers threatened to charge his mother with murder, that he did not know James Bell prior to the subject fire, that in 1997 he heard a " rumor" about " James Dell " at Statesville Correctional Center, but that he never personally talked with anyone by that name, that he was not housed in the same building as a James Dell or James Bell, that he was transferred to Tamms Correctional Center in March 1998, that he did not set fire to the subject video store, and that neither he nor his mother collected any insurance money as a result of the subject fire. People v Harper, supra. ( 2013)

(27)       On 3/17/2010, the State filed a Motion to Dismiss Petitioner's said successive/amended Post-Conviction Petition as untimely. People v Harper, supra. ( 2013)

(28)       On 7/1/2010, the Cook County Circuit Court granted the States' said Motion to Dismiss; and on 7/8/2010, Petitioner filed his Notice of Appeal. People v Harper, supra., ( 2013).

(29)       On March 29, 2013, the First District Illinois Appellate Court reversed the said dismissal of Petitioner's successive/amended Post-Conviction Petition due to a substantial showing of PETITIONER'S SAID ACTUAL INNOCENCE BASED ON NEWLY DISCOVERED, MATERIAL, AND NOT CUMULATIVE EVIDENCE ( Pars # 23 -- #26) and granted him a 3rd stage evidentiary hearing on his said successive/amended Post-Conviction Petition. The Illinois Appellate Court also succinctly held that James Bell's affidavit ( Par# 23), Bell's testimony ( Par #24) and Witness Hingston's affidavit ( Par # 25) were newly discovered evidence , that said newly discovered evidence was material and not cumulative; and that said newly discovered evidence is " of such conclusive character that it would have probably changed the result of Defendant's retrial " People v Harper, supra. ( 2013).

(30)     Thus, on 3/29/2013, the Illinois Appellate Court succinctly held that
         Petitioner had made a substantial showing of a claim of actual innocence
         based on the aforementioned newly discovered evidence which warranted
         an 3rd stage evidentiary hearing on Petitioner's said successive/amended
         Post-Conviction Petition. People v Harper, supra. ( 2013)

(31)     In 2015, pursuant to the aforementioned Illinois Appellate Court's
         decision in People v Harper, supra. ( 2013), an 3rd stage evidentiary hearing
         was conducted for Petitioner's successive/amended Post-Conviction Petition
         before Cook County Circuit Court Judge Wadas; however Judge Wadas
         summarily rejected James Bell's said testimony due to its " zero credibility",
         Hingston's recantation of his prior trial testimony due to it being " inherently
         unreliable " and Petitioner's claim of police coercion with regard to his
         involuntary statement/confession as " not believable ".

(32)     Shortly thereafter in 2015, Petitioner's attorney appealed Judge Wadas's
         decision ; which was eventually affirmed on appeal in 2016.

## POST-CONVICTION PROCEEDINGS FOR CO-DEFENDANT ARTHUR BROWN

(33)     On 8/27/2016, Co-Defendant Arthur Brown, through his attorney,
         court-filed his Petition for Post-Conviction Petition, and on 10/3/2017, a
         post-conviction review court vacated Brown's conviction and granted him
         a new trial; based on significant problems with his 2008 trial involving
         prosecutorial misconduct and ineffective assistance of counsel. People v
         Brown, NO 88 CR 8605 and Brown v City of Chicago, et al, NO; 18 C
         7064 ( U.S.Dist. Ct. N.D. Ill. 2018).

(34)     Initially, the State filed a Notice of Appeal for the said order vacating Brown's conviction; but on November 3, 2017, the State met with Brown's counsel, and the Director of the CCSAO's Conviction Integrity Unit for discussion of said appeal.

(35)     On November 14, 2017. The CCASO withdrew its said Notice of Appeal and entered a nolle prosequi order dismissing the criminal case of Co-Defendant Arthur Brown ; and he was released from custody the same day.  Brown v City of Chicago, et al , supra., ( 2018).

(36)     On December 21, 2017, Co-Defendant Arthur Brown filed a Petition for a Certificate of Innocence ( COI);  which was not contested by CCSAO and was based on the following record:

    (a) The post-conviction court's order finding that, absent the prosecutor's mischaracterization of evidence during the 2008 trial, there was a reasonable likelihood that the jury could have reached a different verdict.

    (b) Arthur Brown's 1990 trial testimony that he had no connection to the Magic Video Store other than occasionally performing construction work there.

    (c) The 2017 testimony of Brown's niece, Nenorah Anderson, from a post-conviction evidentiary hearing in which she stated she saw Mr. Brown early in the morning of the fire; and

    (d) The 2001 affidavit of James Bell, who swore under oath that he alone was responsible for setting the subject fire.

        Brown v City of Chicago ,et al, supra ( 2018)

(37)     On February 28, 2018, the Court granted Co-Defendant Arthur Brown's Certificate of Innocence without an evidentiary hearing. <u>Brown v City of Chicago, et al, supra.</u>, ( 2018)

(38)     On October 22, 2018, Co-Defendant Arthur Brown, through his counsel, court-filed his Federal Section 1983 lawsuit against the City of Chicago and various other named defendants; alleging that they improperly coerced his confession, manufactured false evidence, and otherwise violated his Constitutional rights. <u>Brown v City of Chicago, et al, supra.</u>, ( 2018)

## PETITIONER'S CLEMENCY PROCEEDINGS AND STATE HABEAS CORPUS PETITON

(39)     In October 2021, Petitioner had a clemency hearing before the prison review board; who expressed heavy skepticisms about the aforementioned 2015 findings during the post-conviction 3rd stage post-conviction evidentiary hearing and his totally unfounded decision denying Petitioner's well-supported Post-Conviction Petition.

(40)     Since October 4, 2021, Petitioner has been waiting for a response from Illinois Governor Jay Pritzker as to his pending clemency Petition based on the aforementioned clemency hearing.

(41)     In June 2023, Co-Defendant Arthur Brown received a $7.25 Million dollar settlement from the City of Chicago for his wrongful arson and felony murder conviction.

(42)  On March 11, 2025, Petitioner court-filed his pro se Petition for
Writ of State Habeas Corpus Relief with the Illinois State Supreme
Court based on well-supported constitutional claims of prosecutorial
and police misconduct as well as wilful ineffective assistance of
counsel.

(43)  On May 27, 2025, Petitioner's said pro se Petition for Writ of State
Habeas was summarily denied; with no ruling on its merit, as
documented in the attached Order/ EXHIBIT "A".

(44)  Thus, to further redress the aforementioned proof of his actual
innocence and the wilful aforementioned constitutional claims
of outrageous prosecutorial and police misconduct as well as
wilful ineffective assistance of counsel that foreseeably resulted
in his wrongful arson and felony murder conviction; Petitioner
respectfully submits the following as his verified complaint in
support of his factually and legally well-supported Petition for
Writ of Federal Habeas Corpus Relief pursuant to 28 U.S.C 2254
under well-settled and controlling Federal Law.

ARGUMENT

## INTRODUCTION TO ARGUMENT

(45)     It has been well-settled and succinctly underscored by our United States
Supreme Court for more than 10 years that " a credible showing of actual
innocence allows a petitioner to pursue federal habeas corpus relief on the
merits of his case regardless of any procedural bars, such as a statute of
limitations, through the " miscarriage of justice exception . " McQuiggin v
Perkins, 133 S. Ct. 1924 ( 2013). In McQuiggin v Perkins, supra., the Court
also went on to explain that this " miscarriage of justice exception " to the
one year statute of limitations in 28 U.S.C 2241(d)(1) allows a petitioner to
pursue cases that would otherwise be dismissed as untimely; since the
congressional intent of 28 U.S.C. 2241(d)(1) was to allow such petitions as
timely when based on actual innocence. McQuiggin v Perkins, supra.

(46)     Here, consistent with this aforementioned holding in McQuiggin v
Perkins, supra., the aforementioned record in Petitioner's case ( pars. # 23- #26)
clearly reflects a credible showing of Petitioner's actual innocence; which was
judicially recognized by the Illinois Appellate Court in its decision People vs
Harper, supra..

(47)     Moreover, it has been well-settled and underscored by our U.S. Supreme
Court for almost 100 years that the U.S. Constitutional right to a fair and just trial,
which is expressly guaranteed to state criminal defendants via the Due Process
Clause of the 14th Amendment, imposes on the State specific duties consistent
with the sovereign legal duty to ensure that " justice be done " in all cases."
Cone v Bell, 556 U.S. 489 )( 2009)

(48)        More important, it has been also well-settled and expressly underscored by our United States Supreme Court for more than 60 years that a criminal conviction must be vacated; where the said wrongful conviction was based on conduct of the government that was outrageous and in wilful violation of a state criminal defendant's protected U.S. Constitutional rights, as clearly found and well-documented in Petitioner's instant criminal case through outrageous prosecutorial and police misconduct, as fully addressed below under well-settled and controlling law. U.S. v Russell, 411 U.S. 423 ( 1973).

(A)    THE AFOREMENTIONED RECORD CLEARLY REFLECTS THAT PETITIONER'S CRIMINAL LEGAL PROCESS WAS UNCONSTITUTIONALLY DEFECTIVE IN A SUBSTANTIAL FORM THROUGH OUTRAGEOUS PROSECUTORIAL MISCONDUCT UNDER WELL-SETTLED AND CONTROLLING LAW.

(i)        It has been well-settled and expressly underscored by our U.S. Supreme Court for 60 years that a state prosecutor's improper comments on the defendant's decision not to testify wilfully violates the Due Process Clause of the 5th and 14th Amendments and mandates vacatur of the wrongful conviction. Griffin v California, 380 U.S. 609 ( 1965).

(ii)        Here, consistent with the said holding in Griffin v California, supra., the aforementioned record, as noted above in pars# (8)(c) and #(12), clearly reflect that the outrageous closing argument of state prosecutor Michael Gerber as to Petitioner's decision to not testify was highly prejudicial and constituted as a significant unconstitutional defect in Petitioner's criminal legal process and foreseeably resulted in his wrongful felony murder conviction.

(iii)        Likewise, it has been well-settled and expressly underscored by our U.S. Supreme Court for more than 100 years that a state prosecutor owes a legal duty to refrain from misconduct that is intended to gain an illegal advantage in a criminal legal process, such as highly prejudicial opening and/or closing arguments that clearly misstate the evidence adduced at trial in wilful violation of a defendant's protected 6th and 14th Amendment due process rights. Berger v United States, 295 U.S. 78 ( 1935)



(iv)      Here, consistent with the said holding in Berger v United States, supra., the aforementioned record, as noted above in pars # 8(a)(c)(f) & (g) and #12, clearly reflects outrageous prosecutorial misconduct by said state prosecutor Michael Gerber in his numerous highly prejudicial and improper comments that constituted significant unconstitutional defects in Petitioner's criminal legal process, and foreseeably resulted in his said wrongful felony murder conviction.

(v)       Moreover, in Berger v United States, supra., our U.S. Supreme Court identified et alia the following specific examples of prosecutorial misconduct:

    (a)  Prosecutors knowingly using illegally obtained/tainted evidence.
    (b)  Prosecutors knowingly using falsified evidence.

(vi)      Here, consistent with the said holding in Berger v United States, supra., the aforementioned record, as noted above in pars. # 10 and #11, clearly reflects that the notorious state prosecutor Michael Gerber improperly introduced at trial Petitioner's involuntary statement/confession; despite full knowledge that said statement/confession was illegally obtained by the Chicago PD through unlawful coercion and Miranda rights violations.

(vii)     Moreover, it has been well-settled and expressly underscored by our United States Supreme Court that a wrongful conviction exists, as clearly documented in Petitioner's instant record ( Pars# 10 and #11), where a criminal defendant's involuntary and incriminating statement/confession that was obtained through deliberate improper methods is then used and admitted at trial as substantive evidence against him/her in clear denial of the said defendant's protected due process constitutional rights. Mincey v Arizona, 437 U.S. 385 ( 1978)

(viii)    Thus, based on the aforementioned record, the various cited legal authorities, and the foregoing legal arguments, this Honorable Illinois State Supreme Court must find and conclude that the well-documented prosecutorial misconduct during both of Petitioner's jury trials has been a significant defect in his criminal legal process in wilful violation of his protected 5th, 6th, and 14th Amendment due process rights, which foreseeably resulted in his said wrongful felony murder conviction under well-settled and controlling law.



(B)    THE AFOREMENTIONED RECORD CLEARLY REFLECTS THAT PETITIONER'S CRIMINAL LEGAL PROCESS WAS UNCONSTITUTIONALLY DEFECTIVE IN A SUBSTANTAIL FORM THROUGH OUTRAGEOUS POLICE MISCONDUCT UNDER WELL-SETTLED AND CONTROLLING LAW.

(i)          It has been well-settled and expressly underscored by our United States Supreme Court that coercive and outrageous police misconduct to extract a confession from a criminal defendant during a post-arrest police interrogation constitutes as unconstitutional police misconduct and serves as a legal basis to vacate the defendant's wrongful conviction. Spano v New York, 360 U.S. 315 ( 1959) and Malinski v New York, 324 U.S. 40 ( 1945)

(ii)        Here, consistent with the said holdings in Spano and Malinski, supra., the aforementioned record, as noted above in pars. #10 and #11, clearly reflect that Petitioner's post-arrest police custody interrogation by the Chicago PD included severe coercion and untimely Miranda warnings.

(iii)        Moreover, outrageous joint police and prosecutorial misconduct, as clearly documented in this aforementioned record, has been the legal basis for vacatur of wrongful convictions under the judicial supervisory powers; inasmuch as it serves to deter similar outrageous joint police and prosecutorial misconduct in the future. U.S. v Samango, 607 F. 2d 877 ( 9th Cir. 1979) and U.S. v Owen, 1580 F.2d 367 ( 9th Cir. 1978) Such deterrence of future outrageous joint police and prosecutorial misconduct is particularly essential here to the well-documented longstanding and widespread corruption within the Cook County States Attorneys Office and the Chicago PD that needs no introduction; since such corruption has been the frequent subject matter in many Illinois and Federal case decisions involving wrongful convictions due to coerced and involuntary statements of Cook County criminal defendants. Brown v City of Chicago, 81 C 7064 ( N.D. Ill. 9/30/2022), Serrona v Guevara, 315 F. Supp. 3d. 1026 ( N.D. Ill. 2018), People v Reyes, 369 Ill. App. 3d 1 ( 1st Dist. 2006), People v Almodovar, 2018 Ill. App. 101476 ( 1st Dist. 2013), and People v Montanez, 2013 Ill. App. 1st 101476 ( 1st Dist. 2013)

(iv)         Thus, based on the aforementioned record, the
various cited legal authorities, and the foregoing legal arguments,
this Honorable Illinois State Supreme Court must find and conclude
that the said well-documented police and prosecutorial misconduct
during Petitioner's said criminal case has been a significant
unconstitutional defect in his said legal criminal process in wilful
violation of his protected 5th, 6th, and 14th Amendment due process
rights, which foreseeably resulted in his said wrongful felony murder
conviction.

(C)     THE AFOREMENTIONED RECORD CLEARLY REFLECTS THAT PETITIONER'S CRIMINAL
LEGAL PROCESS WAS UNCONSTITUTIONALLY DEFECTIVE IN A SUBSTANTAL FORM
THROUGH WILFUL INEFFECTIVE ASSISTANCE OF PETITIONER'S TRIAL COUNSEL
UNDER WELL-SETTLED AND CONTROLLING LAW.

(i)          It has been well-settled for more than 15 years that a
criminal defense counsel's failure to object to improper and
highly prejudicial comments/statements by a state prosecutor
during a jury trial constitutes as ineffective assistance of counsel,
and serves as a legal basis for federal habeas corpus relief under
28 U.S.C. 2254.  Girts v Yanai, 501 F3d. 743 ( 6th Cir. 2007)

(ii)         Here, the aforementioned record, as noted above in
Par. #12, clearly reflects that during Petitioner's second jury trial,
his defense counsel wilfully failed to object to numerous highly
prejudicial and improper comments by the notorious state
prosecutor Michael Gerber during his closing argument, as expressly
underscored by the Illinois Appellate Court in People v Harper, supra.

(iii)        Thus, consistent with the said holding in Girts v Yani, supra,
this Honorable Illinois State Supreme Court must find and conclude
that such well-documented failure to object by Petitioner's said
defense counsel constituted prejudicial ineffective assistance of
counsel, and a legal basis for Petitioner's requested State Habeas
Corpus Relief in this instant case.



WHEREFORE, BASED ON THE AFOREMENTIONED AND WELL-DOCUMENTED RECORD, THIS VERIFIED COMPLAINT, THE VARIOUS CITED LEGAL AUTHORITIES, AND THE FOREGOING LEGAL ARGUMENTS, AND IN ACCORDANCE WITH 28 U.S.C. 2254, PETITIONER RESPECTFULLY MOVES THIS HONORABLE U.S DISTRICT COURT TO GRANT HIS SAID REQUESTED FEDERAL HABEAS CORPUS RELIEF THROUGH THE VACATUR OF HIS SAID WRONGFUL ARSON AND FELONY MURDER CONVICTION DUE TO THE AFOREMENTIONED OVERWHELMING AND WELL-DOCUMENTED EVIDENCE OF HIS ACTUAL INNOCENCE AND THE UNCONSTITUTIONALLY DEFECTIVE LEGAL CRIMINAL PROCESS IN A SUBSTANTIAL FORM FROM THE AFOREMENTIONED OUTRAGEOUS JOINT PROSECUTORIAL AND POLICE MISCONDUCT AS WELL AS THE WILFUL INEFFECTIVE ASSISTANCE OF HIS DEFENSE COUNSEL IN WILFUL VIOLATION OF PETITIONER'S PROTECTED 5TH, 6TH, AND 14TH AMENDMENT DUE PROCESS RIGHTS, AND DISCHARGE HIM FROM HIS CURRENT IMPRISONMENT AT THE WESTERN ILLINOIS CORRECTIONAL CENTER UNDER RESPONDENT WARDEN BRITTANY GREENE.

Respectfully submitted

Michael Harper

MICHAEL L. HARPER ( PRISONER ID# BO3541)
PRO SE PETITIONER
WESTERN ILLINOIS CORRECTIONAL CENTER
2500 ROUTE #99 SOUTH
MT. STERLING, ILL 62353

-19-

## AFFIDAVIT OF PETITIONER

I, MICHAEL L. HARPER, AFFIANT, BEING FIRST SWORN UNDER OATH, DEPOSES, AND STATES THAT HE HAS READ THE FOREGOING VERIFIED COMPLAINT/PETITION FOR WRIT OF FEDERAL HABEAS CORPUS PREPARED BY HIMSELF, AND FURTHER STATES THAT THE FACTS STATED THEREIN ARE TRUE AND CORRECT TO THE BEST OF HIS KNOWLEDGE AND BELIEF.

_Michael Harper_

MICHAEL L. HARPER, PRO SE PETITIONER

SUBSCRIBED AND SWORN TO/BEFORE ME ( NOTARY PUBLIC)

THIS __27__ DAY OF __June__ _____ YEAR 2025

NOTARY PUBLIC SEAL

OFFICIAL SEAL
SCOTT GREGORY
NOTARY PUBLIC, STATE OF ILLINOIS
Commission No.0994454
My Commission Expires July 31,2028



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CYNTHIA A. GRANT
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

May 27, 2025

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Michael Harper
Reg. No. B-03541
Western Illinois Correctional Center
2500 Rt. 99 South
Mt. Sterling, IL 62353

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

M.D.015154 - Harper v. Greene

Motion by petitioner for leave to file a petition for writ of habeas corpus is <u>denied</u>.

Very truly yours,

Cynthia A. Grant

Clerk of the Supreme Court

cc: Attorney General of Illinois - Criminal Division

Exhibit "A"